HOBSON, Justice.
This is an appeal by plaintiff, John Hicks, a laborer, from a summary judgment for defendant, John Kemp.
*697 Hicks filed this suit on M.ay 31, 1954, alleging that on December' 17, 1953, while employed by the defendant Kemp to cut and load pulpwood, he had been thrown from the running board of a truck on which he was riding and seriously and permanently injured when the rear wheels passed over his body, crushing his pelvis, rupturing his bladder and urethra, and causing internal hemorrhages and long hospitalization. Damages were claimed in the amount of $10,000 for hospital bills and for pain and suffering. The hospital bill alone was alleged to have come to $1,449.-
Hicks alleged that as 'an employee of defendant he was required to ride on the running board of the moving truck as it was driven through the woods to pick up cut timber left on the ground, and that this was to aid the driver in avoiding stumps and holes. The negligence with which defendant was charged was failure to provide plaintiff with a reasonably safe place to ride on the truck and reasonably safe appliances or instrumentalities to prevent him from falling or being thrown therefrom. The original complaint contained this sentence :
“Plaintiff alleges that the Defendant rejected the provisions of the Workmen’s Compensation Law, Chapter 440, Laws of Florida (F.S.A.), said rejection having occurred prior’to the date on which Plaintiff was employed.” ‘
Defendant’s answer admitted that defendant was in the pulpwood business and bought timber, but denied that he was engaged in “cutting, loading or transporting pulpwood timber from the woods”. Defendant further denied that on December 17, 1953, he employed three or more persons, but alleged that “neither on said date nor at any time prior thereto did the Defendant have any employees”. He denied any knowledge of the duties of the plaintiff and alleged that he had. no duty to provide the plaintiff with a safe place to work and that he had never been subject to the Workmen’s Compensation Law.
After depositions of 'the plaintiffs' and one H. L. Roberts were taken, defendant moved for - summary judgment. Two grounds were assigned. The first was that it was essential to the jurisdiction of the court that the plaintiff prove his allegation that defendant-had rejected the provisions of the Workmen’s Compensation Law and that the allegation could not be proved because in fact defendant had not done so. This ground was supported by an affidavit of the Director of the Workmen’s Compensation Division of the Florida Industrial Commission to the effect that no Notice of Rejection had been filed by Kemp, and an affidavit by Kemp that to his knowledge he had never been subject to the Workmen’s Compensation Law. The second ground assigned was that the 'deposition of the plaintiff affirmatively showed no negligence on defendant’s part.
Subsequently, with -leave of court, the plaintiff filed an amended complaint identical with the original except that the allegation that the defendant had rejected the provisions of the Workmen’s Compensation Law was changed to an allegation that defendant had failed to secure payment of compensation as required by that law. This last allegation was admitted by counsel for defendant in open court, during the hearing on the motion for summary judgment.
After hearing, the court granted the motion, dismissing the complaint at the cost of the plaintiff. In the order granting the summary judgment, certain findings were made, which read in part as follows:
“ * * * it appearing that the above styled cause is a tort action by the plaintiff as an alleged servant against the defendant as his alleged master, and it appearing from the pleadings and from the deposition of the plaintiff, John Hicks, on file in this case, that the facts and evidence as-to the happening of the alleged accident and injuiy to the plaintiff while in-the alleged employment of the defendant are undisputed, as the plaintiff and an alleged fellow servant; whose whereabouts are unknown, are the sole eyewitnesses to said accident and injury, and it appearing that the injury to plaintiff resulted from á dan *698 ger which was obvious to the plaintiff and that there was no duty upon the defendant as the alleged master to warn plaintiff of such danger and it further appearing that the tools and method of work selected by the defendant as the alleged master for the plaintiff as his alleged employee were the tools and methods in common usage in the pulpwood cutting business, and it appearing that there was no breach of duty or lack of care on the part of the defendant as the alleged master resulting in the alleged accident and injury to the plaintiff and no negligence of the master as the employer which was in whole or in part the cause of the injury to the plaintiff, and it appearing that an employer is not an insurer of the safety of his employees and that the basis of recovery against the master is negligence and not mere injury, and it appearing and the Court finding, that there is no genuine issue as to any material fact and that the defendant is entitled to judgment as a matter of law * *
We cannot agree that there was no genuine issue as to any material fact. The judgment must be reversed.
The trial court apparently took the view that the defenses of contributory negligence and assumption of risk were available to defendant to bar recovery. These defenses, along with the fellow servant doctrine, are specifically rendered unavailable by F.S.A. § 440.11, which provides in part that “if an employer fails to secure payment of compensation as required by this chapter an injured employee * * * may elect * * * to maintain an action at law * * * for damages on account of such injury * * *. In such action the defendant may not plead as a defense that the injury was caused by negligence of a fellow servant, nor that the employee assumed the risk of his employment, nor that the injury was due to the contributory negligence of the employee.” Kemp admitted that he had failed to secure payment of compensation. The primary question then arising was whether he was “required” to do so by the provisions of Chapter 440. If he was, he lost three possible defenses under F.S.A. Sec. 440.11, above, while if he was not, the defenses might have been available to him. The answer to this question turned upon whether or not the employer-employee relationship alleged in the complaint and denied in the answer was made out. No determination of this issue was made by the court.
Under F.S.A. § 440.02 the term “employer” includes “every person carrying on any employment” and an “employment” includes “all private employments in which three or more employees are employed in the same business or establishment”, with exceptions not material here. The term “employee” comprehends “every person engaged in an employment under any appointment or contract of hire * * * express or implied, oral or written * * * excluding independent contractors * * * ”
Obviously Hicks himself, an individual laborer, was not an “independent contractor”. But Hicks might have been employed not by Kemp but by an independent contractor employed by Kemp, in which event Kemp would have been insulated from liability growing out of an employer-employee relationship with Flicks. The testimony of Roberts, apparently an overseer for Kemp, on deposition, would suggest that Hicks was employed by an independent contractor who had been engaged to cut and haul wood and was paid directly, per unit of wood cut, without regard for division of the money among his men. Also, according to Roberts, neither Kemp nor Roberts exerted, or had authority to exert, any significant degree of control over the activities of the purported subcontractor. According to Hicks, however, he had been employed by Roberts to work for Kemp, the individual men on the job were paid directly by Kemp and Roberts, and Kemp and Roberts had supervision and control of the whole operation in the woods. This conflict of testimony on deposition raised a genuine issue of fact which was certainly material herein. See Taylor v. Williams, Fla., 40 So.2d 122, and Sears, Roebuck & Co. v. Pixler, 140 Fla. 677, 192 So. 617.
The establishment of the status of independent contractor under the Act depends in *699 each case upon a detailed factual investigation. See Magarian v. Southern Fruit Distributors, 146 Fla. 773, 1 So.2d 858, for a statement of the relevant factors involved in making this determination. It should be noted, however, that the importance of formal tests in this field should not be overemphasized, because of the danger of giving legal sanction to an effort on the part of an employer to avoid the provisions of the Act by creating the appearance of employing only independent contractors when for all practical purposes a master-servant relationship actually exists.
Another consideration which made vital a determination of the existence or non-existence of the employer-employee (or master-servant) relationship between the parties to this litigation is the direct bearing which such determination must have upon the issue of negligence. Although a master is not an insurer of his servant’s safety, he has a positive duty to provide his servant with reasonably safe instrumentalities and places to work. This is a common law doctrine which is based upon the rule of respondeat superior. See Holstun v. Embry, 124 Fla. 554, 169 So. 400, and Bartholf v. Baker, Fla., 71 So.2d 480. Obviously, such a duty does not exist between persons dealing at arm’s length and in the absence of a master-servant relationship. It is therefore impossible in the case at bar to determine whether defendant breached his duty to provide plaintiff with reasonably safe instrumentalities and a reasonably safe place to work, and was hence negligent, without first determining whether or not the defendant had such a duty, and defendant had such a duty only if he was plaintiff’s employer or master. Throughout most of his findings, the trial judge refers to the defendant as the “alleged” master and to the plaintiff as the “alleged” servant. It is clear that no progress can be made in the case unless and until this crucial issue 'is resolved.
If the trial judge’s order can be interpreted to mean that even if defendant were plaintiff’s employer no negligence was made out as a matter of law on uncontro-verted material facts, it is evident that no such conclusion is or can be supported by the record 'before us. For example, there is no support in this record for the factual elements of the finding that “the tools and method of work selected by the defendant as the alleged master for the plaintiff as his alleged employee were the tools and methods in common usage in the pulpwood cutting business * * * And even if this finding were sound, it would not be conclusive, because the master’s duty is not necessarily fulfilled by supplying the servant with instrumentalities in “common usage”. It is reasonable safety of the in-strumentalities which the law requires 'of the master, with due regard to the exigency of the situation and the character of the work to be done. Holstun v. Embry, supra, 169 So. 400.
The trial court disposed of controlling issues of fact in this case on pleadings, depositions and affidavits. The judgment appealed from must therefore be, and it is •hereby, reversed and remanded for further proceedings not inconsistent herewith.
MATHEWS, C. J., and THOMAS and DREW, JJ., concur.